## DARTER *v.* THE STATE, EX REL. MANSON.

SCHOOL BOARD.—*City.*—*Statute Construed.*—The act of March 8th, 1873 (Acts 1873, p. 68), did not require a yearly organization of the board of school trustees by an annual election of president, secretary, and treasurer. Such officers, when elected, were, under said act, entitled to serve during the term for which they served as trustees.

From the Montgomery Circuit Court.

*P. S. Kennedy* and *W. F. Brush,* for appellant.

*L. Wallace, G. D. Hurley,* and *R. B. F. Pierce,* for appellee.

WORDEN, J.—This action involves the question whether, under the facts stated, Manson, the relator, or Darter, the appellant, was the legal treasurer of the corporation for school purposes of the city of Crawfordsville. The action was brought in 1874, and it appears from the complaint and answer that in April, 1873, the appellant, Darter, Robert K. Krout, and Ephraim Griffith were duly elected as the board of trustees of said corporation by the common council of the city, and that they duly qualified as such, and entered upon their duties; that they organized, and determined by lot that Krout should hold one year, the appellant two, and Griffith three years; that Griffith was duly elected by the board as president, Krout secretary, and the appellant treasurer; that the appellant received his certificate of election as such treasurer, and duly gave bond; that at the first meeting of the common council in April, 1874, that body elected Peter C. Summerville as one of such trustees, to fill the vacancy about to occur by the expiration of the term of said Krout; that Summerville resigned at the first meeting of the board thereafter, and that in May of that year, the relator, Manson, was elected by the common council to fill the vacancy; that afterward, in May, 1874, the board met, and Griffith and Manson, by an agreement between themselves, elected the appellant, Darter, as president of the board, Griffith secretary, and Manson treasurer. This was done over the protest and resistance of the appellant, who declined to serve as such president, and notified them of his intention to serve as such treasurer until the expiration of the time for which he was entitled to serve as such trustee. Manson, however, duly qualified, gave bond, and claimed the office.

These are the facts as we gather them from the complaint and answer, on which the question arises.

The court below sustained a demurrer to the answer setting

up such of the facts as do not appear in the complaint, and the appellant excepted.   Final judgment for the appellee.

The question arising on these facts is, whether, under the act of March 8th, 1873 (Acts 1873, p. 68), Darter was entitled to hold his office as such treasurer for one year only, or for the term for which he was entitled to hold as trustee.   The act is amendatory of, and supplemental to, an act to provide for a general system of common schools, etc., 3 Ind. Stat. 440, and the first section thereof, upon which the question mainly turns, is as follows :

"Section 1.  Be it enacted by the General Assembly of the State of Indiana, that section 5 of the above recited act be amended to read as follows, to wit : Section 5.  The common council of each city, and the board of trustees of each incorporated town of this State, shall, at their first regular meeting in the month of April, elect three school trustees, who shall hold their office one, two, and three years, respectively, as said trustees shall determine by lot at the time of their organization, and annually thereafter shall elect one school trustee who shall hold his office for three years.   Said trustees shall constitute the school board of the city or town, and before entering upon the duties of their office, shall take an oath faithfully to discharge the duties of the same.   They shall meet within five days after their election and organize by electing one of their number president, one secretary, and one treasurer.  The treasurer, before entering upon the duties of his office, shall execute a bond to the acceptance of the county auditor, conditioned as in ordinary official bonds, with at least two sufficient freehold sureties, who shall not be members of said board, in a sum not less than double the amount of money which may come into his hands within any one year by virtue of his office.   The president and secretary shall each give bond with like sureties to be approved by the county auditor, in any sum not less than one-third of the treasurer's bond.   Said trustees shall receive for their services such compensation as the common council of the city or board of trustees of the town may deem just ; which compensation shall be paid from the special

school revenue of the city or town. All vacancies that may occur in said board of school trustees, shall be filled by the common council of the city, or board of trustees of the town."

This section is a little indefinite in respect to the point involved here, but we find nothing in it, or in other parts of the statute, which justifies the conclusion that the legislature contemplated a yearly organization of the boards of trustees, by an annual election of president, secretary, and treasurer. There is nothing in the statute that, in terms or by implication, requires this to be done. On the contrary, it seems to us to have been intended that when the president, secretary, and treasurer were elected, they should serve as such during the term for which they were to serve as trustees. The treasurer is required to give bond " in a sum not less than double the amount of money which may come into his hands within any one year by virtue of his office." This implies that the term of the treasurer might extend beyond a year. When the legislature provided that the treasurer should give bond in double the amount of money that might come into his hands within any one year by virtue of his office, they recognized the proposition that money might come into his hands in other years by virtue of his office. It might have fallen to the lot of the one elected as treasurer to serve as trustee for the term of one, two, or three years; and, as has been already stated, we think it was designed that when one was elected treasurer, secretary, or president, he should serve in that capacity during his term as trustee. The reason of requiring the treasurer to give bond to secure the amount only that might come into his hands in any one year is perhaps found in the seventh section of the act, which provides: "The tuition revenue apportioned to the school shall be expended within the school year for which it was apportioned." It may be added that if the legislature had intended that the treasurer should hold his office but one year, it is natural to suppose that they would have provided for his giving bond sufficient to secure what money might come into

his hands during his term of office as such, instead of making the provision above set out.

But, aside from these considerations, the law provides that when the trustees shall have determined by lot the length of the term of each, they shall organize by electing one of their number president, one secretary, and one treasurer, and there is no limit fixed for the term of service as such, except the limit of the term of office as trustee.

The question arising under the statute of 1873 has become one of no general public importance, inasmuch as the legislature has since provided, that " the board of school trustees shall each year, within five days after the annual election of a member, reorganize their board, and execute their respective bonds for the ensuing year." · Acts Reg. Ses. 1875, p. 135.

We are of opinion that the appellant was, and that Manson was not, entitled to the office, and that the court below erred in sustaining the demurrer to the answer.

The judgment below is reversed, with costs, and the cause remanded, for further proceedings in accordance with this opinion.